3rd Division
February 19, 1997 

 No. 1-95-1779

EVELYN HUNT, Special Administrator )
of the Estate of JOHNIE HUNT, ) 
 ) APPEAL FROM THE CIRCUIT
 Plaintiff-Appellee, ) COURT OF COOK COUNTY.
 )
v. )
 )
RICHARD M. DALEY, MAYOR; CITY OF )
CHICAGO DEPARTMENT OF POLICE; CITY ) THE HONORABLE
OF CHICAGO MAYOR's LICENSE ) ELLIS REID,
COMMISSION; WINSTON L. MARDIS, ) JUDGE PRESIDING. 
Director, Mayor's License )
Commission, )
 )
 Defendants-Appellants. )

 JUSTICE GORDON delivered the opinion of the court:

 This proceeding involves the 1982 Chicago Weapons Ordinance,
passed by the Chicago City Council on March 19, 1982 (see Chicago
Municipal Code 11.1 et seq. (1982), now amended and recodified
at Chicago Municipal Code 8-20-010 et seq. (1990) (set forth in
pertinent part in our Discussion, below)), rendering certain
firearms unregisterable in the City of Chicago. Under that
ordinance, several categories of firearms, including handguns,
became unregisterable in the City of Chicago. See Chicago
Municipal Code 11.1-3 (1982) (now Chicago Municipal Code 8-20-
050 (1990)). However, pursuant to a grandfathering provision
provided in the 1982 ordinance, handgun owners whose handguns
were validly registered prior to the effective date of the
handgun ban could continue to re-register their handguns. See
Chicago Municipal Code 11.1-3(c)(1) (1982) (now Chicago
Municipal Code 8-20-050(c)(1) (1990)). The 1982 ordinance also
required that such re-registration take place every two years. 
See Chicago Municipal Code 11.1-18 (1982) (amended and
recodified in 1994 to require annual re-registration (see Chicago
Municipal Code 8-20-200(a) (1994))). The failure to re-register
firearms every two years after the enactment of the 1982
ordinance rendered such firearms permanently unregisterable, and
thereby caused handgun owners to forfeit their right to possess
such firearms within the City of Chicago. See Chicago Municipal
Code 11.1-18 (1982) (now Chicago Municipal Code 8-20-200(c)
(1990)).
 In September 1993, the plaintiff's decedent, Johnie Hunt,
(hereinafter Hunt) filed applications with the Gun Registration
Section of the Chicago Police Department to re-register his three
handguns. The Police Department denied Hunt's applications on
the ground that he had failed to renew his previous firearm
registrations upon their expiration every two years, in violation
of section 8-20-200(a) of the Chicago Weapons Ordinance (Chicago
Municipal Code 8-20-200(a) (1990)). Hunt appealed that decision
to the Mayor's License Commission of the City of Chicago, which
also denied re-registration based upon section 8-20-200(a). Hunt
then filed a complaint for administrative review of those orders
in the Circuit Court of Cook County against defendants Richard M.
Daley, Mayor of the City of Chicago; the Chicago Police
Department; and against the Mayor's License Commission and its
director, Winston L. Mardis. The circuit court reversed
defendants' denial of Hunt's applications to re-register, on the
grounds that section 8-20-200(c) of the Weapons Ordinance is
unconstitutional. Defendants appeal from that order.
 The underlying facts are undisputed. As established in his
testimony before the Mayor's License Commission, at the time of
the enactment of the 1982 weapons ordinance, Hunt owned three
handguns which were validly registered. He kept his handguns at
home to protect himself and his wife. Up to 1987, Hunt properly
re-registered his handguns every two years, as required under the
applicable provisions of the 1982 ordinance. On each re-
registration application, there was a notice to handgun owners
that all firearms registration certificates would expire two
years after the date of their issuance, at which time all subject
weapons would have to be re-registered. Although there is some
dispute as to whether he re-registered his handguns in 1989, the
parties agree that after 1989, Hunt did not re-register his
handguns again until four years later, when he submitted the
September 14, 1993 re-registration applications at issue here. 
Hunt also testified at the administrative hearing, over the
objection of the City of Chicago, that he had been hospitalized
repeatedly between 1986 and 1993 for treatment of diabetes,
hypertension, prostatitis, and for the amputation of his leg and
surgery on his spine.
 The Mayor's License Commission rejected Hunt's September
1993 re-registration application. In his complaint for
administrative review before the circuit court, Hunt urged as he
had before the Mayor's License Commission that the denial of his
re-registration applications was an abuse of discretion, was
against the manifest weight of the evidence, and was arbitrary
and capricious. Hunt then filed a motion for summary judgment,
in which for the first time he argued that the denial of his re-
registration was unconstitutional. The circuit court denied that
motion, stating that summary adjudication was an improper means
of disposition on administrative review. The circuit court then
proceeded to hearing, pursuant to which it reversed the decision
of the Mayor's License Commission on constitutional grounds, to
allow Hunt to re-register his handguns, stating as follows:
 "With the inclusion of the grandfather clause, the
 handgun ordinance is essentially a compromise position 
 between the interests of the City in eliminating
 dangerous weapons from the street and the reliance
 interests and vested property rights of Mr. Hunt. *** 
 By declaring that Mr. Hunt may not renew the
 registration in spite of his legislatively mandated
 grandfathered status, simply because he failed to renew
 his registration within two years of a previous
 registration, *** the City of Chicago [has attempted]
 to achieve retroactive application of a prospective
 ordinance. As such, the actions of the City of Chicago
 in the case at bar serve no legitimate government
 function *** [because they] attempt to give with one
 hand and take away with the other."
Defendants appeal from that order.
DISCUSSION:
 On appeal, defendants first contend that the circuit court
erred in considering the constitutionality of the re-registration
requirement, first raised before it, because the issue was waived
insofar as Hunt failed to raise the issue before the Mayor s
License Commission. Defendants further contend that even absent
waiver, the circuit court was incorrect in finding section 8-20-
200(c) of the Weapons Ordinance unconstitutional. We reverse for
the reasons which follow.
 We first address the waiver issue. At the outset, we note
that the parties agree that, as is the case with administrative
agencies generally, the Mayor s License Commission did not have
the power to invalidate a statute in the first instance because
of any substantive due process violation. See generally 2 Am.
Jur. 2d Administrative Law 77, at 99 (1994) ("it is axiomatic
that an administrative agency has no power to declare a statute
void or otherwise unenforceable."). See also Yellow Cab Co. v.
City of Chicago, 938 F. Supp. 500 (N.D. Ill. 1996)
(administrative agencies lack power to determine the
constitutionality of legislation which they must enforce); Palm
Harbor Special Fire Control District v. Kelly, 516 So. 2d 249
(Fla. 1987) (administrative agency has no power to declare a
statute void or unenforceable). Consequently, plaintiff urges
that since the Mayor's License Commission could not resolve the
issue, there was no reason to raise it there. Defendant,
however, responds that notwithstanding that inability to rule on
the issue, the issue must be raised during the administrative
hearing if for no other reason than that of creating a record
that will better enable the reviewing court to address the issue
on review.
 There appears to be some support for defendants' position in
that regard. Cf. Caauwe v. Police Pension Board, 216 Ill. App.
3d 313, 576 N.E.2d 1078 (1991). See also Miller v. Police Board,
38 Ill. App. 3d 894, 349 N.E.2d 544 (1976). However, we need not
here resolve this question, because the rule is clear that waiver
is only an admonition to litigants, not a limitation upon the
jurisdiction of a reviewing court. American Federation of State,
County & Municipal Employees v. County of Cook, 145 Ill. 2d 475,
584 N.E.2d 116 (1991); In re Marriage of Rodriguez, 131 Ill. 2d
273, 545 N.E.2d 731 (1989). Therefore, the circuit court, which
first heard this administrative appeal, was well within the
latitude of its discretion to entertain this issue,
notwithstanding any waiver contentions. Accordingly, because the
circuit court was in any event acting properly within the
latitude of its discretion when it considered plaintiff's
constitutional challenge, we now consider the merits of that
constitutional issue.
 Turning to the merits, defendants contend that the circuit
court erred in holding section 8-20-200(c) of the 1982 Weapons
Ordinance unconstitutional. In opposition, plaintiff appears to
argue that Hunt had vested property rights in his handguns under
article I, section 22 of the Illinois Constitution (Ill. Const.
1970, art. I, 22), which provides individual citizens with a right
to bear arms subject to the police power, and that he had a vested
right to retain his ownership in those weapons, and in his right to
use them for personal security purposes. The plaintiff would
further urge that by punishing Hunt's failure to re-register his
handguns every two years with unregisterability, section 8-20-
200(c) of the 1982 ordinance violated his substantive due process
rights. Contrary to the circuit court, we find no merit in
plaintiff's constitutional contentions.
 The pertinent provisions of the 1982 ordinance are as follows:
 "8-20-040 Registration of firearms.
 (a) All firearms in the city of Chicago shall be
 registered in accordance with the provisions of this
 chapter." Chicago Municipal Code section 8-20-040(a)
 (1990) (formerly 11.1-2(a)).
 "8-20-050 Unregisterable firearms.
 No registration certificate shall be issued for any of
 the following types of firearms:
* * * 
 (c) Handguns, except:
 (1) those validly registered to a current owner in
 the city of Chicago prior to the effective date of this
 chapter ***." Chicago Municipal Code 8-20-050 (1990)
 (formerly 11.1-3).
 * * *
 "8-20-200(a) Renewal of Registration.
 (a) Every registrant must renew his registration
 certificate annually [every two years under 11.1-
 18(a)].
* * * 
 (c) Failure to comply with the requirements for
 renewal of registration of a firearm shall cause that
 firearm to become unregisterable. Chicago Municipal
 Code 8-20-200(c) (1990) (formerly 11.1-3(a), (c)).
As noted above, handguns registered prior to the enactment of the
1982 ordinance were grandfathered under section 8-20-050(c)
thereof, but such handguns became unregisterable if owners failed
to re-register those firearms every two years. The failure to
timely re-register in that regard was penalized with
unregisterability under section 8-20-200(c).
 The decision of our supreme court in Kalodimos v. Village of
Morton Grove, 103 Ill. 2d 483, 470 N.E.2d 266 (1984) is pivotal. 
In Kalodimos, the plaintiffs challenged the comprehensive handgun
ban of Morton Grove, Illinois, under article I, section 22 of the
Illinois Constitution, arguing, inter alia, that the Morton Grove
ordinance was an unconstitutional exercise of the police power. 
The Morton Grove handgun ban provided that no person could
possess a handgun in Morton Grove unless the gun had been
rendered permanently inoperative. The Kalodimos court held that
the right to bear arms under article I, section 22 was not a
fundamental right, stating as follows:
 "Not every right secured by the State or Federal
 constitutions is fundamental, however, but only those
 which 'lie at the heart of the relationship between the
 individual and a republican form of nationally
 integrated government' [citation]. While the right to
 possess firearms for purposes of self-defense may be
 necessary to protect important personal liberties from
 encroachment by other individuals, it does not lie at
 the heart of the relationship between individuals and
 their government. The right to arms guaranteed by the
 Federal Constitution has never been thought to be an
 individual right, as distinguished from a collective
 right [citation]; moreover, the right to arms secured
 by the Illinois Constitution, which did not exist prior
 to 1970, is subject, as we have explained, to
 substantial infringement in the exercise of the police
 power even though it operates on the individual level. 
 [Citation.]" Kalodimos, 103 Ill. 2d at 509, 470 N.E.2d
 at 277-278.
 The Kalodimos court therefore concluded that the relevant
test to be applied in their due process and equal protection
analysis of the Morton Grove ordinance was one of rational basis,
and not of strict scrutiny. In holding that the Morton Grove
ordinance met the criteria of the rational basis test, the court
noted that the stated purpose of the Morton Grove ordinance, as
reflected in its preamble, was to reduce firearm-related deaths
and injuries caused by the convenient availability of certain
types of firearms. In that regard, the Kalodimos court said,
 "a ban on handguns under the conditions set forth in
 the ordinance could rationally have been viewed by the
 village as a way of reducing the frequency of
 premeditated violent attacks as well as unplanned
 criminal shootings in the heat of passion or in
 overreaction to fears of assault, accidental shootings
 by children or by adults who are unaware that a handgun
 is loaded, or suicides." Kalodimos, 103 Ill. 2d at
 510, 470 N.E.2d 278.
 Thus, as determined in Kalodimos, the test which should
control the constitutionality of an ordinance, such as the
Chicago Weapons Ordinance, which seeks to restrict or to
eliminate the use of handguns, is the rational basis test. Under
this test, we must determine whether such ordinance is rationally
related to a legitimate governmental interest. A rational
relationship exists between legislation and a legitimate
governmental interest if legislation tends to prevent some
offense or evil or if it tends to preserve the public health,
morals, safety and welfare to some degree. Normal v. Seven Kegs,
Two Tappers, & Two Barrels, 234 Ill. App. 3d 715, 599 N.E.2d 1384
(1992). If the law bears a reasonable relationship to a proper
legislative purpose and is neither arbitrary nor discriminatory,
"the requirements of due process are met and the courts will not
substitute their judgment for that of the legislature." Illinois
Gamefowl Breeders Ass'n v. Block, 75 Ill. 2d 443, 454, 389 N.E.2d
529, 533 (1979), quoting S. Bloom, Inc. v. Mahin, 61 Ill. 2d 70,
77, 329 N.E.2d 213, 217 (1975). If there is any conceivable
basis for finding a rational relationship, the law in question
will be upheld. People v. Windsor, 242 Ill.App.3d 1030, 611
N.E.2d 596 (1993). See also Bricklayers Union Local 21 v. Edgar,
922 F. Supp. 100 (N.D. Ill. 1996) (where there are plausible
reasons for a legislative enactment, a court's inquiry under the
rational basis due process test is at an end). 
 The overall purpose of the Chicago Weapons Ordinance here in
question, as reflected in its preamble, is substantially
identical to the public policy purposes found in the preamble to
the Morton Grove ordinance, referred to above, held to be
legitimate in Kalodimos. See Chicago City Council Proceedings,
Vol. IV, at 10049 (March 19, 1982) (setting forth preamble to
newly enacted Chicago Weapons Ordinance). See also Sklar v.
Byrne, 727 F.2d 633, 640 n.9 (7th Cir. 1984) (quoting City
Council's preamble to 1982 Chicago Weapons Ordinance and
upholding the federal constitutionality of that ordinance). 
Thus, as was made clear in Kalodimos, there can be no question
with respect to the Chicago Weapons Ordinance that its
constitutional validity must be held to the standard of the
rational basis test and that the criteria for that test are
satisfied by the overall purpose of that ordinance. See Sklar,
727 F.2d 633 (upholding constitutionality of 1982 Chicago Weapons
Ordinance under United States Constitution). See also Quilici v.
Village of Morton Grove, 695 F. 2d 261 (7th Cir. 1982) (upholding
Morton Grove handgun ban under United States Constitution).
 However, having determined that the overall purpose of the
1982 ordinance satisfies the rational basis test, we must next
consider specifically the constitutionality of section 8-20-
200(c) thereof, which, as noted, renders unregisterable
previously grandfathered handguns which were not re-registered in
a timely fashion. See Kalodimos, 103 Ill. 2d 483, 470 N.E.2d 266
(rational basis test applied to specific provisions as well as to
overall purpose of Morton Grove ordinance). Although the Chicago
City Council did not explicitly articulate the purposes of
section 8-20-200(c), we can conceive of several such purposes. 
See Ball v. Village of Streamwood, 281 Ill. App. 3d 679, 665
N.E.2d 311 (1996) (court may hypothesize reasons for legislation,
even if the reasoning advanced did not motivate legislative
action); Alamo Rent A Car, Inc. v. Ryan, 268 Ill. App. 3d 268,
643 N.E.2d 1345 (1994). As noted by defendants, section 8-20-
200(c) may well have been enacted, among other things, to (1)
maintain a census of handguns in Chicago, (2) to measure the
relationship between handgun possession and violent crime, (3) to
catalog handgun ownership to track handgun theft as well as
lawful transfers, and (4) to more readily associate a handgun
with its owner s current address. These would constitute
sufficient purposes under the rational basis test to enforce
timely re-registration using the unregisterability penalty of
section 8-20-200(c). These reasons are particularly cogent
insofar as they help implement the overall purpose of the
ordinance, which is to substantially eliminate or reduce the
hazards engendered by the possession of handguns.
 Plaintiff contends that section 8-20-200(c) is
unconstitutional because the legislature could have used
alternative means to achieve the goals underlying the enactment
of the ordinance, including the imposition of a fine, or a
provision for the independent notification of each handgun owner 
prior to the expiration of their handgun registration
certificates. We disagree. Under the rational basis test, the
existence of a less onerous or more equitable alternative means
of securing a governmental interest is not by itself sufficient
to render an ordinance unconstitutional. See Kalodimos, 103 Ill.
2d at 509, 470 N.E.2d at 277 ("[i]nitially, we observe that the
search for less onerous alternative means of securing a
governmental interest is a hallmark of strict scrutiny, which
comes into play only when a fundamental right is invaded"). (As
noted previously, the Kalodimos court further concluded that the
right to bear arms is not a fundamental right.) See also
Windsor, 242 Ill.App.3d 1030, 611 N.E.2d 596. We also note that
plaintiff has not demonstrated that the degree of enforcement
would be as effective with a fine as it would be with the loss of
registration rights. Furthermore, with respect to the contention
that more adequate notice should have been provided, it is well
settled that all citizens are presumptively charged with
knowledge of the law. See Singh v. Department of Professional
Regulation, 252 Ill. App. 3d 859, 625 N.E.2d 656 (1993). 
Moreover, in point of fact, notice of the two-year registration
requirement was included in each re-registration application
which Hunt filled out since 1982.
 Plaintiff, however, contends that section 8-20-200(c) of the
ordinance is arbitrary because it did not take into consideration
Hunt's need for handguns to protect his family, nor the fact that
he suffered serious medical problems during the period in which
he failed to re-register. However, these contentions are
likewise without merit. Hunt did not show that his need for
handguns was any greater than the needs of any other citizens
whose handguns were grandfathered subject to the provisions of
section 8-20-200(c), or, for that matter, whose handguns were not
grandfathered at all. Moreover, as fully discussed above, our
supreme court in Kalodimos validated the constitutionality of the
Morton Grove ordinance which abolished the right to possess
working handguns for all of its citizens without grandfathering
any. Nor is there anything in the record to establish that
Hunt's medical condition prevented him from filing a timely re-
registration application. Even if it were shown to be otherwise
disabling, Hunt's medical condition would not have prevented him
from renewing his registrations by mail. Moreover, the record
reflects that notwithstanding his medical condition, Hunt
continued to work until his retirement in 1991, during which time
he could have satisfied the re-registration requirements of the
ordinance.
 Plaintiff additionally contends, somewhat obliquely, that
section 8-20-200(c) is unconstitutional because it would have
operated retrospectively to vitiate Hunt's right to re-register
his handguns provided by section 8-20-050(c), the grandfathering
provision of the 1982 ordinance. This argument incorrectly
characterizes section 8-20-200(c) as having a retroactive effect
upon the grandfathering provision. The two sections were adopted
simultaneously with the enactment of the 1982 ordinance. See
Valdez v. Zollar, 281 Ill. App. 3d 329, 665 N.E.2d 560 (1996)
(law not retroactive merely because it relates to antecedent
events or facts); Griffin v. City of North Chicago, 112 Ill. App.
3d 901, 445 N.E.2d 827 (1983). See also Harraz v. Snyder, 283
Ill. App. 3d 254, 669 N.E.2d 911 (1996) (law not retroactive
unless it impairs vested right acquired under existing laws or
attaches a new disability regarding past transaction); Klawitter
v. Crawford, 185 Ill. App. 3d 778, 541 N.E.2d 1159 (1989). Here,
section 8-20-200(c) does not purport to retroactively modify the
grandfathering provision. Having been enacted simultaneously
with the grandfathering provision, section 8-20-200(c) merely
imposes a continuing condition which must be satisfied for the
grandfathering provision to remain in effect.
 We also find no merit in plaintiff's reliance upon Nachman
Corp v. Pension Benefit Guaranty Corp., 592 F. 2d 947 (7th Cir.
1979); Michael Reese Hospital and Medical Center v. United
States, 684 F. Supp. 986 (N.D. Ill. 1988); and General Telephone 
Co. v. Johnson, 103 Ill. 2d 363, 469 N.E.2d 1067 (1984) to
support the contention that the ordinance here is
unconstitutional because it is inequitable, harsh and burdensome. 
Those cases are wholly inapposite. In all three cases, the
courts found that the statutes in question did not violate any
constitutional due process rights. Plaintiff has failed to show
how those cases may have any applicability to the instant case.
 For the foregoing reasons, the judgment of the Circuit Court
of Cook County is reversed.
 COUSINS, Jr., P.J. and HOURIHANE, J., concur.